UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:16-cr-00241-KJM |
| Plaintiff, | ORDER |
| v. | |
| Tion Makeise Foster, | |
| Defendant. | |

Defendant Tion Foster seeks a reduction in his prison sentence. *See* Mot. at 1, ECF No. 150 (citing U.S.S.G. § 5H1.1). The court construes his request as a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). The motion is **denied**. As explained in this order, Foster has not cited "extraordinary and compelling reasons" that warrant a reduction in his sentence, and a reduction is not appropriate under the sentencing factors in 18 U.S.C. § 3553(a).

**I.    BACKGROUND**

In 2016, a sixteen-year-old girl told her high school counselor that Foster and another person, Monica Morales, had sexually assaulted her and had coerced her to perform sexual acts with others in exchange for money and food. *See* Plea Agreement Ex. A at 1, ECF No. 64 (factual basis). Law enforcement officers investigated. *See id.* With the girl's permission, they monitored her phone calls and Facebook Messenger conversations, including calls and conversations with Foster. *See id.* He and Morales were arrested after they arranged to meet the

girl and an undercover officer. *See id.* at 1–2. Foster was convicted for that conduct in state court, *see id.* at 2, and federal prosecutors obtained an indictment charging him and Morales with sex trafficking of a child and conspiracy to commit sex trafficking of a child in violation of federal law, *see generally* Indictment, ECF No. 13 (citing 18 U.S.C. §§ 1591(a)(1), 1591(b)(2), 1594(c)). Foster was in his early twenties at the time. *See* Presentence Investigation Report at 2, ECF No. 91 (noting a birthdate in 1995).

Foster pleaded guilty to the first count in the indictment, for sex trafficking of a child. *See* Plea Agreement at 2; Change of Plea Hr'g Mins., ECF No. 62. The government agreed to dismiss the conspiracy count. *See* Plea Agreement at 4. This court accepted Foster's guilty plea and in 2018 imposed a prison sentence of twelve-and-a-half years, followed by a ten-year term of supervised release. *See* Am. Judgment & Commitment, ECF No. 103. Records kept by the Bureau of Prisons show Foster's prison term currently will conclude in June 2030. *See* Opp'n Ex. 1 at 3, ECF No. 162-1.

In December of last year, Foster filed his current motion after the warden denied his request for a sentencing reduction. *See* Mot. at 2–3. He is not represented by counsel. *See generally* Order (Jan. 7, 2025), ECF No. 153. He argues a reduction is appropriate because "the offense conduct occurred when [he] was in [his] late teens or early twenties" and because he would have received a lesser sentence in light of unspecified intervening amendments to the Sentencing Guidelines. Mot. at 1. He also asks the court to consider two exhibits, which in his view show "there is an on ongoing problem with no medical assistance" in the facility where he is incarcerated. *See* Exhibits at 1, ECF No. 163.

The first of these exhibits is a report of an MRI scan conducted in October 2024. *See id.* at 4–5. It showed "[m]ild early degenerative disks . . . from T6 level down to T10," "Schmori's node impressions in mid and lower thoracic spine," "[n]o spinal chord lesions or syrinx," "[n]o enhancing lesion," and "[m]inor building discs" at "T7–8 and T8–9." *Id.* There was also "definite lymphadenopathy," which led the physician to "strongly recommend" a CT scan of Foster's chest. *Id.*

1    The second exhibit is a report from the recommended CT scan, which was performed in
2    December 2024. *See id.* at 2–3. The report describes evidence of three "peripherally lobulated
3    and subtle peripheral spiculated nodules," among other things, and notes that "differential
4    diagnosis would include entities such as metastatic disease to the chest, lymphoma, and a variety
5    of potential inflammatory /granulomatous type diseases, which can include fungal infections,
6    other nonfungal infections and TB and noninfectious granulomatous disease, such as sarcoid and
7    others." *Id.* A physician recommended a follow up visit with a pulmonologist and "further
8    clinical and lab workup," including a biopsy "for definitive diagnosis." *Id.* at 3. There is no
9    further medical evidence in the record.

10   The government opposes Foster's motion. *See generally* Opp'n, ECF No. 162. The court
11   took the matter under submission without holding a hearing.

12   **II.   DISCUSSION**

13   District courts can grant a defendant's motion for a sentencing reduction under
14   § 3582(c)(1)(A) only if (1) the defendant has previously sought that relief from the warden or
15   Bureau of Prisons;[1] (2) "extraordinary and compelling reasons" warrant a reduction; (3) a
16   reduction "is 'consistent with applicable policy statements' issued by the U.S. Sentencing
17   Commission"; and (4) the court has considered the sentencing factors listed in 18 U.S.C.
18   § 3553(a). *United States v. Chen*, 48 F.4th 1092, 1094–95 (9th Cir. 2022) (quoting 18 U.S.C.
19   § 3582(c)(1)(A)). The government does not dispute that Foster exhausted his administrative
20   remedies by first requesting relief from the warden. It argues the court should deny Foster's
21   motion because his relative youth at the time of the conviction conduct does not provide an
22   "extraordinary and compelling reason" and because the relevant sentencing factors weigh against
23   a reduction.

24   In recent years, many defendants serving lengthy prison sentences for crimes they
25   committed in their youths have asked federal district courts to consider the possibility that their

---

[1] More specifically, either (1) the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) thirty days must have passed after "the receipt of such a request by the warden of the defendant's facility." 28 U.S.C. § 3582(c)(1)(A).

immaturity at the time of their crimes, their ongoing efforts to improve, and other circumstances, such as intervening changes in the law, might together make for "extraordinary and compelling" reasons to reduce that lengthy sentence under § 3582(c)(1)(A). *See generally, e.g.*, *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021); *United States v. Lara*, 658 F. Supp. 3d 22 (D.R.I. 2023); *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021). Quite commonly these defendants have been men who received life sentences for murders and other violent crimes they committed as part of a gang or other racketeering enterprise many years before, when they were still in their teenage years or early twenties. *See, e.g.*, *United States v. Bryant*, No. 06-234, 2024 WL 2028268, at *1 (D. Nev. May 6, 2024), *appeal filed*, No. 24-3093 (9th Cir. May 15, 2024); *United States v. Espino*, No. 03-20051, 2022 WL 4465096, at *2–3 (D. Kan. Sept. 26, 2022); *Ramsay*, 538 F. Supp. 3d at 410–14.

District courts at times have agreed that a sentence should be reduced based in part on society's greater contemporary understanding about how neurologically immature teenagers and young adults are; how susceptible they are to the pressures exerted upon them; how dependent they are on others and circumstances beyond their control; and how likely it is that many people will not be as violent or reckless in their later years. *See, e.g.*, *Ramsay*, 538 F. Supp. 3d at 417–23. But as these courts have recognized, "cognitive neuroscience is still in its infancy." *Id.* at 417 (citations and alterations omitted). It "consists largely of hypotheses that are far from certainties." *Id.* (citations and quotation marks omitted). "History counsels hesitancy, especially when brain science is offered as evidence about individuals in particular cases." *Id.* (citations and quotation marks omitted).

Some federal courts have rejected defendants' requests to entertain this argument at all. A defendant's age, circumstances and maturity—or lack thereof—are part of what a court must consider when it imposes a sentence to begin with. *See Hunter*, 12 F.4th at 569. One court has observed Congress might have not intended federal courts to revisit their sentencing decisions when the defendant's "personal circumstances" have not "changed after sentencing in a way that is 'extraordinary and compelling.'" *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

4

The Ninth Circuit and Supreme Court have not weighed in. These are difficult questions but this is not the case to attempt to answer them. This court considered Foster's relative youth at the time of his offense, in addition to what he did, his difficult personal history and a great deal of other similar information about his life and actions. *See* 18 U.S.C. § 3553(a)(1) ("The court, in determining the particular sentence to be imposed, shall consider [among other things] the nature and circumstances of the offense and the history and characteristics of the defendant[.]"); PSR at 5–16 (collecting information about the circumstances of Foster's offense and his personal history); *see also* Sentencing Statement of Reasons (noting the court's consideration of Foster's age, lack of youthful guidance, and mental and emotional condition, among other things). Foster does not explain what has changed materially since 2018, when he was sentenced, or what new or different information he would like this court to consider. In short, the court remains persuaded now, as it was in 2018, that a twelve-and-a-half-year prison sentence is "sufficient, but not greater than necessary, to comply with the purposes" listed § 3553(a), such as "to reflect the seriousness of the offense" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A), (C).

As noted, Foster also asks the court to consider his need for medical treatment, and he argues "there is an ongoing problem with no medical assistance" in the facility where he is housed. *See* Exs. at 1, ECF No. 163. Many federal district courts, including this court, have considered whether a sentencing reduction is appropriate in light of a defendant's need for medical treatment and whether the Bureau of Prisons has met or can meet those needs. *See, e.g.*, *United States v. Vasquez*, No. 09-00155, 2023 WL 6924457, at *3 (E.D. Cal. Oct. 18, 2023). The Sentencing Commission also has stated that "[e]xtraordinary and compelling reasons exist" when a defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). But Foster has not shown he needs treatment or specialized care that he has not received. The scan reports he submitted show he is receiving care and has been referred for further diagnosis and follow-up treatment.

III. **CONCLUSION**

The court **denies** the motion for a reduction in sentence. This order does not preclude Foster from renewing his motion. If he does, however, he must provide evidence to support his claim of extraordinary and compelling reasons. The court will summarily deny any renewed motion he files without such evidence in support.

This order resolves ECF No. 150.

IT IS SO ORDERED.

DATED: March 6, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE